**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

IN RE: GARY D. GRUNAU and
JACQUELYN M. GRUNAU,

                      Debtors.
_____/

GARY D. GRUNAU and JACQUELYN M.
GRUNAU,


                      Appellants,


-vs-                                         Case No.  2:06-cv-500-FtM-34DNF
                                         Bankr. No. 9:06-bk-02573-ALP


CHAPTER 13 TRUSTEE,
JON M. WAAGE,


                      Appellee.
_____

IN RE: HEINZ REMMEL,

                      Debtor.
_____/

HEINZ REMMEL,


                      Appellant,


-vs-                                           Case No.  2:06-cv-501-FtM-34DNF
                                         Bankr. No. 9:06-bk-02521-ALP


CHAPTER 13 TRUSTEE,
JON M. WAAGE,


                      Appellee.
_____/

## <u>ORDER</u>

**THIS CAUSE** is before the Court on a consolidated appeal from the United States

Bankruptcy Court's August 18, 2006, Order determining the reasonableness of attorney's

fees received by Appellants' Counsel in the above styled Chapter 13 bankruptcy cases.

Appellants Gary D. Grunau, Jacquelyn M. Grunau, and Heinz Remmel (collectively "the

Appellants") filed their initial brief on October 26, 2006.  <u>See</u> Brief of Appellants (Dist. Dkt.

No. 12; Initial Brief).[1]   On December 4, 2006, Appellee, the Chapter 13 Trustee, filed an

answer in opposition to the Initial Brief.  <u>See</u> Answer Brief of Appellee (Dist. Dkt. No. 15;

Answer).[2]  The Appellants filed a reply to the Answer on January 12, 2007.[3]  <u>See</u> Reply Brief

of Appellant (Dist. Dkt. No. 19; Reply).  Accordingly, this appeal is ripe for review.

---

[1]       In the instant Order, the Court will refer to the docket numbers from this Court as "Dist. Dkt. No. __".  With respect to the docket numbers assigned by the bankruptcy court, the Court will refer to the docket entries as follows: (1) docket entries from <u>In re: Grunau</u> will be referred to as "Grunau Bank. Dkt. No. ____"; and (2) docket entries from <u>In re: Remmel</u> will be referred to as "Remmel Bank. Dkt. No. ____".

[2]       Rule 8009(a)(2) of the Federal Rules of Bankruptcy Procedure requires an Appellee to "serve and file a brief within 15 days after service of the brief of Appellant."  F.R.B.P. 8009(a)(2).  Thus, Appellee's Answer was initially due on November 13, 2006.  <u>See id.</u>  However, Appellee filed a motion asking the Court for an extension of time to file his Answer on November 1, 2006.  <u>See</u> Appellee's Motion for Extension of Time to File Reply Brief (Dkt. No. 13; Appellee's Motion).  In an Order dated  November 7, 2006 (Dkt. No. 14), the Court granted Appellee's  Motion and directed Appellee to file his Answer within 30 days of the Order.  As noted above, Appellee filed his Answer on December 4, 2006.  Thus, Appellee's Answer was timely filed.

[3]       Under Rule 8009(a)(3) of the Federal Rules of Bankruptcy Procedure,  Appellant's Reply was due within 10 days after service of Appellee's Answer.  <u>See</u> F.R.B.P. 8009(a)(3).  However, on December 13, 2006, Appellants filed a motion seeking an extension of time to file their Reply.  <u>See</u> Motion for Enlargement of Time in Order to File Reply Brief (Dkt. No. 16; Appellants' Motion).  On December 14, 2006,  the Court granted Appellants' Motion and directed Appellants to file their Reply within 30 days of the date of the Order.  <u>See</u> Order (Dkt. No. 18) at 2.  As noted above, Appellants filed their Reply on January 12, 2007.  Accordingly, Appellants' Reply was timely filed.

I.      **PROCEDURAL HISTORY**

On May 25, 2006, Heinz Remmel ("Appellant Remmel") filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code in the Fort Myers Division of the United States Bankruptcy Court for the Middle District of Florida.  <u>See</u> <u>generally</u> Voluntary Petition (Remmel Bank. Dkt. No. 1; Voluntary Petition-Remmel).  The next day Gary D. Grunau and Jacquelyn M. Grunau (collectively "the Grunaus") also filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code with the same court.  <u>See</u> <u>generally</u> Voluntary Petition (Grunau Bank. Dkt. No. 1; Voluntary Petition-Grunau).   As part of the supporting documentation for these Chapter 13 cases, Appellants' Counsel, Edward R. Miller and Richard J. Hollander of the law firm of Miller & Hollander, filed statements disclosing their compensation in accordance Rule 2016(b) of the Federal Rules of Bankruptcy Procedure.  <u>See</u> Voluntary Petition-Remmel at 42; Voluntary Petition-Grunau at 54 (collectively "Statements").  In these Statements, Counsel disclosed that they had received $4,000 for services rendered or to be rendered to the Grunaus, and $3,000 for services rendered or to be rendered to Appellant Remmel.  <u>See</u> <u>id.</u>  Counsel further represented that Appellants had also agreed to pay an additional $350.00 per hour, plus costs, for any adversary proceedings, motions, or hearings other than the creditor's meeting.[4]  <u>See</u> <u>id.</u>

In response to the statements, the bankruptcy court entered Orders to Show Cause Regarding Attorney Fees.  <u>See</u> Order to Show Cause Regarding Attorney Fees  (Grunau

---

[4]      In addition to the Statements, Counsel filed Applications for Allowance of Attorney Fees. <u>See</u> <u>generally</u> Application for Allowance of Attorney Fees (Grunau Bank. Dkt. No. 22; Application-Grunau), filed on June 30, 2006; Application for Allowance of Attorney Fees (Remmel Bank. Dkt. No. 23; Application-Remmel), filed on June 30, 2006.  In the Applications, Counsel included a list of the services the firm agreed to render for the fee charged to Appellants. <u>See</u> Application-Grunau at 2-3; Application-Remmel at 2-3.

Bank. Dkt. No. 18; Order to Show Cause-Grunau), filed on June 21, 2006; Order to Show Cause Regarding Attorney Fees (Remmel Bank. Dkt. No. 17; Order to Show Cause-Remmel), filed on June 23, 2006 (collectively "Orders to Show Cause").   In the Orders to Show Cause, the bankruptcy court stated that, upon review of the Statements, "it appears to be appropriate to examine the reasonableness of the fees charged by [C]ounsel of record pursuant to § 329 of the Bankruptcy Code."   See Order to Show Cause-Grunau at 1; Order to Show Cause-Remmel at 1.   The bankruptcy court also directed Counsel to appear at a hearing on July 6, 2006, and show cause "why [] order[s] should not be entered requiring a disgorgement of such amounts as may be found to be in excess of a reasonable fee."   See Order to Show Cause-Grunau at 1-2; Order to Show Cause-Remmel at 1-2.

Both matters came before the bankruptcy court on July 6, 2006.  With respect to the $4,000 fee charged to the Grunaus, the bankruptcy judge asked Counsel Champeau[5] "what do you want to tell me about this [fee]?"   See Transcript of the July 6, 2006 hearing re: Order to Show Cause (Grunau Bank. Dkt. No. 46; Transcript-Grunau) at 3.   In response, Counsel Champeau noted the following:

> Judge, this is not your typical Chapter 13 case.  The total funding of this Plan over 60 months is $346,967.  There are two objections to confirmation already pending.
>
> There is an IRS claim that has been filed, which is disputed as to the amount of liability owed.  And there was also an issue with respect to the Debtors selling their homes multiples times before the filing of the case.  So, we had to review the closing documents to insure that they didn't run afoul of 522(p), the full homestead exemption.

---

[5]   It appears Mr. Champeau is an associate with Miller & Hollander.

See id.  Under further questioning by the judge, Counsel Champeau acknowledged that this

case did not involve a mortgage foreclosure.  See id. at 3-4.  After the judge  noted that he

would be entering an order on the issue of attorney's fees, Counsel Champeau offered to

submit an order with a blank amount to the Court.  See id. at 4.  The judge accepted Counsel

Champeau's offer.  See id.

      At the July 6, 2006, hearing with respect to the fee obtained from Appellant Remmel,

Counsel Champeau noted that he had filed an amendment stating that the firm had received

$2,500 for services rendered to Appellant  Remmel, and not the $3,000 previously claimed.

See   Transcript of Hearing Held July 6, 2006 on Order to Show Cause re Attorney Fees

(Remmel Bank. Dkt. No. 48; Transcript-Remmel) at 3; see also Amendment to Form 2016(B)

(Remmel Bank. Dkt. No. 22), filed June 30, 2006.  Counsel Champeau further indicated that

the case was a mortgage foreclosure case which would also involve the filing of an objection

to an IRS proof of claim.  See id.  After the judge noted that the case involved a difficult legal

problem requiring extensive research, he again accepted Counsel Champeau's offer to

submit an order with a blank amount to the court.  See id. at 4.

      On July 14, 2006, the bankruptcy court entered an order deferring its ruling on the

Order to Show Cause in both bankruptcy cases.  See Order on Order to Show Cause

(Grunau Bank. Dkt. No. 27; Order Deferring Ruling on the Order to Show Cause-Grunau);

Order on Order to Show Cause (Remmel Bank. Dkt. No. 26; Order Deferring Ruling on the

Order to Show Cause-Remmel) (collectively "Orders Deferring Ruling on the Order to Show

Cause").  In the Orders Deferring Ruling on the Order to Show Cause, the bankruptcy court

stated that, upon consideration of the Applications and the record, it found the $4,000 fee

charged to the Grunaus and the $2,500 fee charged to Appellant Remmel to be excessive. See Order Deferring Ruling on the Order To Show Cause-Grunau at 2; Order Deferring Ruling on the Order to Show Cause-Remmel at 2. Nevertheless, the bankruptcy court deferred its rulings on the Orders to Show Cause to provide Counsel with an additional opportunity to justify their fees by submitting to the court a detailed description of the services rendered to the Grunaus and Appellant Remmel along with timesheets and other supporting documentation. See id.

Counsel filed their responses to the Orders Deferring Ruling on the Orders to Show Cause together with their timesheets on July 28, 2006. See Response to Order Deferring Ruling On Order to Show Cause Regarding Attorney Fee (Grunau Bank. Dkt. No. 31; Response-Grunau); Response to Order Deferring Ruling on Order to Show Cause Regarding Attorney Fees (Remmel Dkt. No. 29; Response-Remmel) (collectively "Responses"). The timesheets submitted by Counsel reflected that Counsel had rendered 26.25 hours of legal services to the Grunaus which, based upon their hourly rates, equated to attorney's fees in the amount of $6,468.75, and 19.80 hours of legal services to Appellant Remmel which equated to attorney's fees in the amount of $4,922.50. See id. at 3-7. In the Responses, Counsel represented that the timesheets did not include all of the work they performed for the Appellants and that they expected to spend an additional 10 hours rendering legal services for the Grunaus. See Response-Grunau at 1; Response-Remmel at 1. Counsel also asked the bankruptcy court to "hold an evidentiary hearing regarding the issue of the fees for reasonableness of the fees and the work expected to be expended." See id.

On August 18, 2006, the bankruptcy court entered a Combined Order discharging the Orders to Show Cause and finding the attorney's fees received by Counsel in both cases to be excessive.  See Combined Order on Order to Show Cause Regarding Attorney Fees (Grunau Bank. Dkt. No. 37; Combined Order); Combined Order on Order to Show Cause Regarding Attorney Fees (Remmel Bank. Dkt. No. 36; Combined Order).  In the Combined Order, the bankruptcy court acknowledged that Counsel requested a hearing in both cases on the issue of the reasonableness of the fees charged.  See id. at 4.  However, the bankruptcy court denied Counsel's request noting that the court itself was an expert in regard to the reasonableness of attorney's fees, and thus, was not required to consider expert testimony on the issue.  See id.  While the bankruptcy court recognized that the amount of time attorneys must spend representing Chapter 13 debtors had increased due to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, it noted that most of the additional work was ministerial and non-legal in nature.  See id. at 6-7.

Before determining the reasonableness of the fees charged by Counsel, the bankruptcy court acknowledged that the Middle District of Florida[6] has emphasized, in O'Rear v. American Family Life Assurance Co. of Columbus, Inc., 144 F.R.D. 410 (M.D. Fla. 1992), that courts should rely on the lodestar method in reaching a decision regarding attorney's fees.  See Combined Order at 5.  The court then turned to a review of  the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).  See Combined Order at 7-12.  In applying the Johnson factor regarding "the customary fee

_____

[6]     In the record, O'Rear is mistakenly referred to as an Eleventh Circuit case.  See Combined Order at 5; Initial Brief at 19-20; Answer at 15.

for similar work in the community", the bankruptcy court observed that the average attorney's fee for a Chapter 13 case ranged from $1,200 to $1,700.  See Combined Order at 9.  The Court also noted that it had recently informed "the Bar that it [would] accept fee applications without itemization of up to $2000 in Chapter 13 cases." See id.  After determining that the fee charged by Counsel in both cases was excessive, the Court disgorged $2,000.00 of the $4,000.00 Counsel had received from the Grunaus and $500.00 of the $2,500.00 Counsel had obtained from Appellant Remmel. See id. at 12-13.

## II.    STANDARD OF REVIEW

This Court has jurisdiction to hear an appeal from a final judgment entered by the United States Bankruptcy Court. See 28 U.S.C. § 158(a).  In functioning as an appellate court, the Court reviews de novo the legal conclusions of a bankruptcy court but must accept a bankruptcy court's factual findings unless they are clearly erroneous. See In re JLJ Inc., 988 F.2d 1112, 1116 (11th Cir. 1993). "A finding [of fact] is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).  In addition, the Court may not make independent factual findings. See In re JLJ Inc., 988 F.2d at 1116; In re Englander, 95 F.3d 1028, 1030 (11th Cir. 1996).  Accordingly, "[i]f the bankruptcy court is silent or ambiguous as to an outcome determinative factual question, the case must be remanded to the bankruptcy court for the necessary factual findings."   In re JLJ Ind., 988 F.2d at 1116.

The Court reviews a bankruptcy court's award or denial of attorney's fees for an abuse of discretion. <u>See</u> <u>Matter of U.S. Golf Corp.</u>, 639 F.2d 1197, 1201 (5th Cir. 1981)[7]; <u>In re Beverly Mfg. Corp.</u>, 841 F.2d 365, 369 (11th Cir. 1988). A bankruptcy court abuses its discretion in issuing a decision on attorney's fees by failing to apply the proper legal standard, not following proper procedures in making the determination, or basing an award on findings of fact that are clearly erroneous. <u>See</u> <u>Matter of U.S. Golf Corp.</u>, 639 F.2d at 1201; <u>In re Beverly Mfg. Corp.</u>, 841 F.2d at 369.

### III.    Summary of Argument

Appellants raise three issues on appeal.[8] <u>See</u> Initial Brief at 5. Appellants first argue that the bankruptcy court abused its discretion by failing to afford their Counsel "notice and a hearing", as required by Rule 2017 of the Federal Rules of Bankruptcy Procedure, before finding that the attorney's fees received by Counsel were excessive. <u>See</u> Initial Brief at 15-19. Appellants also assert that the bankruptcy court applied an incorrect legal standard in determining the reasonableness of the fees received by their Counsel. <u>See</u> <u>id.</u> at 19-21.[9]

---

[7]        In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (<u>en banc</u>), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[8]        Appellants request oral argument on the issues raised in the Initial Brief. <u>See</u> Initial Brief at 1. Upon consideration of the issues presented, the undersigned finds that oral argument is unnecessary. Therefore, Appellants' request is **DENIED**.

[9]        Appellants also contend that Bankruptcy Court set an arbitrary, presumptively reasonable fee of $2,000.00 for the filing of a Chapter 13 bankruptcy. <u>See</u> Initial Brief at 21-25. Because the Court finds that this case is due to be remanded in order to enable the Bankruptcy Court to clarify the legal standard it followed in determining the fee awards in the instant consolidated cases, the Court declines to address this issue.

## IV.    DISCUSSION

### a.    Did the Bankruptcy Court satisfy the "notice and a hearing" requirements of Rule 2017?

Appellants argue that the bankruptcy court's issuance of the Combined Order without providing their Counsel with the opportunity to be heard at an evidentiary hearing constituted a violation of Rule 2017 and Counsel's due process rights.  See Initial Brief at 15-19. Appellants also contend that the bankruptcy court abused its discretion by denying their request for an evidentiary hearing on the issue of the reasonableness of the fees they paid their Counsel.  See id. at 17-18.  While Appellants do not dispute the bankruptcy court's assertion that it, itself, is an expert on the reasonableness of attorney's fees, Appellants assert that the court was required to grant their request for an evidentiary hearing in order to enable Counsel to shed light on the issues of material fact that were relevant to the court's determination of the reasonableness of the fees Counsel obtained in the two cases.  See id.

In the instant cases, the bankruptcy court examined the reasonableness of the fees charged by Counsel pursuant to 11 U.S.C. § 329.  Section 329 provides that, if a bankruptcy court finds that the compensation paid to a debtor's attorney exceeds the reasonable value of the services rendered by the attorney, then the court may cancel the fee agreement, or order the return of the payment to the bankruptcy estate or the entity that made the payment, to the extent the fee received is found to be excessive.  See 11 U.S.C. § 329(b).  The Federal Rules of Bankruptcy Procedure provide that a bankruptcy court may examine the reasonableness of the fees received by the debtor's attorney on its own initiative, stating that:

10

> on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code . . . to an attorney for services rendered or to be rendered is excessive.

F.R.B.P. 2017(a).  The term "after notice and a hearing" is defined in Section 102(1) of the Bankruptcy Code as "such notice as is appropriate in the particular circumstances, and such opportunity for hearing as appropriate in the particular circumstances . . ."  See 11 U.S.C. § 102(1)(A).  Section 102 also explains that the term authorizes a bankruptcy court to act without an actual hearing provided that notice is properly given and either the party in interest does not request a hearing or there is not enough time for a hearing to be commenced.  See 11 U.S.C. § 102(1)(B).

As an initial matter, the Court finds that the bankruptcy court provided Counsel with adequate notice that it would be considering the reasonableness of their fees pursuant to 11 U.S.C. § 329.  Indeed, the bankruptcy court specifically stated, in the Orders to Show Cause, that, upon review of the statements submitted by Counsel, "it appears to be appropriate to examine the reasonableness of the fees charged by [C]ounsel of record pursuant to § 329 of the Bankruptcy Code."  See Order to Show Cause-Grunau at 1; Order to Show Cause-Remmel at 1.  In addition, as noted by Appellee in his Answer, see Answer at 12, the Bankruptcy Court held a hearing in each case prior to determining that the fees received by Appellants' Counsel were excessive.  This Court must determine whether these hearings were sufficient to fulfill the bankruptcy court's obligation under Rule 2017 or whether, instead, the bankruptcy court was required to grant Appellants' request for evidentiary hearings prior to disgorging a portion of their Counsel's fees.

11

The Eleventh Circuit Court of Appeals has not addressed what type of hearing is appropriate under Rule 2017 when a bankruptcy court considers whether attorney's fees paid by a Chapter 13 debtor are excessive.  The Third Circuit Court of Appeals has held, in the context of a Chapter 11 case, that, if a bankruptcy court intends to disallow certain items of compensation paid by an attorney who is a "good faith applicant"[10], it must allow the attorney a meaningful opportunity, should he or she request it, to be heard at a hearing.  See In re Busy Beaver Bldg. Centers, Inc., 19 F.3d at 845-46.[11]  The court stated that, either before or at the hearing, the bankruptcy judge should inform the attorney of his or her particular objections to the attorney's compensation in order to provide the attorney with a meaningful opportunity to rebut or contest the judge's conclusions through legal arguments and/or evidence.  See id. at 846-847.  In discussing the type of hearing to which the attorney is entitled, the court noted that:

> the anatomy of the hearing lies within the sound discretion of the bankruptcy judge, and would not necessarily require the presentation of oral testimony. For example, the type of hearing which 'is appropriate in the particular circumstances' might simply be an oral hearing (whether in court or more informally, as by teleconference) at which the applicant submits argument based upon the papers.  The essential point is that the court should give counsel a *meaningful* opportunity to be heard.

---

[10]     The Third Circuit defined a good faith applicant as someone "who reasonably and in good faith attempts to comply with the applicable rules governing the format and substance of fee applications."  See In re Busy Beaver Bldg. Centers, Inc., 19 F.3d 833, 846 (3rd Cir. 1994).

[11]     The Court notes that the Third Circuit's discussion was premised upon the assumption that 11 U.S.C. § 330(a)(1) pertained to fee awards for debtors' attorneys.  See In re Busy Beaver Bldg. Centers, Inc., 19 F.3d at 841, 845-46; In re Eliapo, 468 F.3d 592, 602 n.5 (9th Cir. 2006).  The Supreme Court has noted that 11 U.S.C. § 330(a)(4)(B), governs fee awards for debtors' attorneys in Chapter 13 bankruptcies.  Lamie v. United States Tr., 540 U.S. 526, 537 (2004).  While 11 U.S.C. § 330(a)(4)(B) does not contain the "notice and a hearing" language which is included in 11 U.S.C. § 330(a)(1), the Third Circuit also relied on Rule 2017 in its analysis.  See In re Busy Beaver Bldg. Centers, Inc., 19 F.3d at 846.  Thus, the Court finds the Third Circuit's analysis relevant to the instant discussion.

12

See id. at 846 n.16.

In comparison, the Ninth Circuit Court of Appeals has held, in the context of a Chapter 13 case, that a hearing is required whenever a bankruptcy court materially reduces the fee amount requested by an attorney. See In re Eliapo, 468 F.3d at 602. Nevertheless, that court acknowledged that, depending on the circumstances, Rule 2017's hearing requirement may be fulfilled by written submission as long as the attorney is given "a reasonable opportunity to present legal argument and/or evidence to clarify or supplement his Application." See id. at 603 (quoting In re Pfleghaar, 215 B.R. 394, 397 (8th Cir. BAP 1997)). Moreover, the court stated that, because Chapter 13 fee cases are normally rather simple, "[s]o long as fair notice and an opportunity to be heard are afforded, the bankruptcy court has considerable freedom to fashion procedures for notice and a hearing that are 'appropriate in the particular circumstances.'" See In re Eliapo, 468 F.3d at 603 (quoting 11 U.S.C. § 102(1)(A)).

The Court finds that the bankruptcy court satisfied Rule 2017's hearing requirement. In entering the Orders to Show Cause after Counsel filed the Statements, the bankruptcy court indicated to Counsel that it considered the fees charged to the Grunaus and Appellant Remmel to be excessive for Chapter 13 cases. See generally Order to Show Cause-Grunau; Order to Show Cause-Remmel. Thus, the bankruptcy court informed Counsel of its objections to their compensation. See In re Busy Beaver Bldg. Centers, Inc., 19 F.3d at 846. In addition, the bankruptcy court provided Counsel with the opportunity to explain the necessity of their fees at the respective hearings. See generally Transcript-Grunau; Transcript-Remmel. Specifically, the bankruptcy court ordered Counsel to appear at a

hearing to show cause why a disgorgement of any excessive fee should not be ordered. See Order to Show Cause-Grunau at 1-2; Order to Show Cause-Remmel at 1-2. Moreover, instead of immediately entering an Order on the reasonableness of Counsel's fees following these hearings, the bankruptcy court provided Counsel with an additional opportunity to justify their fees by submitting to the court a detailed description of the services rendered to the Grunaus and Appellant Remmel along with timesheets and other supporting documentation. See Order Deferring Ruling on the Order to Show Cause-Grunau at 2; Order Deferring Ruling on the Order to Show Cause-Remmel at 2. Given the foregoing, the Court finds that the bankruptcy court provided Counsel with a meaningful opportunity to rebut or contest its conclusion that the fees charged by Counsel were excessive for Chapter 13 cases. See In re Busy Beaver Bldg. Centers, Inc., 19 F.3d at 846.

While Appellants contend that the bankruptcy court abused its discretion by denying their request for an evidentiary hearing, the Court finds it noteworthy that Appellants failed to make this request until after the bankruptcy court had already conducted hearings and entered the Order Deferring Ruling on the OTSC. See Response-Grunau at 1; Response-Remmel at 1. Moreover, while Appellants now contend that Counsel "requested a hearing to elucidate issues of material fact that would bear upon the issue of the reasonableness of attorney's fees", Counsel did not indicate in either of the Responses that there were any issues of material fact in dispute. See Matter of U.S. Golf Corp., 639 F.2d at 1202 (holding that a bankruptcy judge, in determining the reasonableness of attorney fees, "must hold an evidentiary hearing if there are any disputed factual issues."). Indeed, Counsel generally stated that they were requesting an evidentiary hearing "regarding the issue of the fees for

14

reasonableness of the fees and the work expected to be expended." See Response-Grunau at 1; Response-Remmel at 1. Moreover, Counsel Champeau indicated, at the hearings, that the issue of the reasonableness of the fees was ripe for resolution through his offer to submit a proposed Order with a blank amount to the bankruptcy judge. See Transcript-Grunau at 4; Transcript-Remmel at 4. In light of the foregoing, the Court finds that the bankruptcy court did not abuse its discretion by denying Appellants' request for an evidentiary hearing

> **b.    Did the bankruptcy court apply an incorrect legal standard in determining the reasonableness of the fees obtained by Appellants' Counsel?**

Appellants next assert that the bankruptcy court applied the wrong legal standard in determining the reasonableness of the fees awarded to their Counsel. See Initial Brief at 19-21. They contend that, while the bankruptcy court recognized that the Eleventh Circuit has emphasized that courts should rely on the lodestar method in reaching a decision regarding attorney's fees, the bankruptcy court, nevertheless, based its analysis solely on the twelve factors set forth in Johnson. See Initial Brief at 20-21.

In Norman v. Housing Authority of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988), the Eleventh Circuit endorsed the lodestar method for calculating a reasonable award of attorney's fees. See also Grant v. George Schumann Tire & Battery Co., 908 F.2d 874, 879 (11th Cir. 1990) (applying the lodestar method in determining a reasonable fee award in a bankruptcy case). The lodestar is calculated by multiplying the reasonable hourly rate by the reasonable number of hours expended in a particular case. See Norman, 836 F.2d at 1299. To aid in a court's determination of an attorney's reasonable hourly rate, a court may also consider the relevant factors set out in Johnson v. Ga. Highway Express, Inc., 488 F.2d

714, 717-19 (5th Cir. 1974).  See Norman, 836 F.2d at 1299; Loranger v. Stierheim, 10 F.3d 776, 781 n.6 (11th Cir. 1994) (per curiam).  The Johnson factors include:  (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the degree of skill necessary to serve the client properly, (4) the attorney's inability to accept other employment because of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the relief or results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the attorney's professional relationship with the client, and (12) awards in similar cases.  Johnson, 488 F.2d at 717-19.

In the instant consolidated cases, the bankruptcy court acknowledged that the Eleventh Circuit has held that courts should rely on the lodestar method in reaching a decision regarding attorney's fee.[12]  See Combined Order at 5.  However, upon review of the Combined Order, it is not clear that the bankruptcy court actually applied the lodestar method.  See generally Combined Order.  Indeed, the bankruptcy court did not expressly perform a lodestar analysis in finding that a reasonable attorney's fee was $2,000 in each case.  See generally id.  Instead, the bankruptcy court appeared to focus its analysis on the Johnson factors.  See id. at 7-12.

The Sixth Circuit Court of Appeals has held that bankruptcy courts must expressly calculate the lodestar amount when determining reasonable attorney's fees in Chapter 13

_____

[12]   In acknowledging the Eleventh Circuit precedent on this issue, the bankruptcy court cited the O'Rear decision from the Middle District of Florida.  See Combined Order at 5.  Nevertheless, the bankruptcy court was correct in its analysis of the Eleventh Circuit precedent on this issue.  See Grant, 908 F.2d at 879.

cases.  See In re Boddy, 950 F.2d 334, 338 (6th Cir. 1991).  Similarly,  a panel of the Eighth

Circuit Court of Appeals held generally that, unless a bankruptcy court finds that a lodestar

calculation is inappropriate under the circumstances of the particular case, it must expressly

calculate the lodestar amount.  See In re Kula, 213 B.R. 729, 737 (8th Cir. BAP 1997).  While

the court commented that Chapter 13 cases are "not prone to a lodestar calculation", it

nevertheless concluded that the court "should make a finding that such a calculation is

inappropriate under the circumstances."  Id.  Several courts have expressly rejected the

widespread use of the lodestar method in Chapter 13 cases.  See In re Howell, 226 B.R.

279, 281 (Bankr. M.D. Fla. 1998) (finding that "Chapter 13 cases are not appropriate cases

for the use of the lodestar method . . . [because] they are much more susceptible to a

standard rate or flat, fixed rate approach, based upon all the relevant legal factors"); In re

Murray, No. 06-13821ELF, 2007 WL 2317523, at *2 (Bankr. E.D. Pa. Aug. 6, 2007)

(recognizing the court's summary procedure, established by local rule, for approving attorney

fee applications up to $2,000 in Chapter 13 cases); In re Shamburger, 189 B.R. 965, 974-75

(Bankr. N.D. Ala. 1995) (suggesting a system of review where a bankruptcy court may allow

a Chapter 13 debtor's attorney initial fees based on a "debt-based, normal and customary,

standard" and need not engage in the lodestar method unless an additional fee is requested

and the court finds that the attorney performed extraordinary work); In re Szymczak, 246

B.R. 774, 781-82 (Bankr. D. N.J. 2000) (finding that the "use of the lodestar method for

calculating legal fees does not achieve fair and reasonable results for debtor's counsel in

chapter 13 cases"); In re Newman, No. 00-06154-8W3, 01-12534-8W3, 2003 WL 751327,

at *3 (Bankr. M.D. Fla. Feb. 18, 2003) (determining that it is appropriate to establish a

presumptively reasonable fee in routine Chapter 13 cases as an alternative to the lodestar method); see also In re Busy Beaver Bldg. Centers, Inc., 19 F.3d at 856 (stating that "contrary to the apparent view of the Sixth Circuit Court of Appeals, see In re Boddy, 950 F.2d 334, 337 (6th Cir.1991), § 330 by no means ossifies the lodestar approach as the point of departure in fee determinations."). Many of these courts, noting that Chapter 13 cases normally involve the same or similar non-complex legal issues, have established presumptively reasonable fees or fixed fees for "normal and customary" work which will only be adjusted through the use of the lodestar method or by other means if a particular case is found to have necessitated extraordinary work. See In re Howell, 226 B.R. at 280-82; In re Szymczak, 246 B.R. at 779-81; In re Newman, 2003 WL 751327 at *3.

The Eleventh Circuit Court of Appeals has not addressed the use of presumptive fees in Chapter 13 cases. However, the court has held, in regard to voluminous attorney's fee applications, that a court does not need to provide an hour-by-hour analysis of a fee request as long as the court provides "a concise but clear explanation of its reasons" for reducing the attorney's hours. See Loranger, 10 F.3d at 783.

Here, the Court need not address the issue of whether bankruptcy courts must expressly apply the lodestar method in determining the reasonableness of attorney's fees in all Chapter 13 cases or whether they may utilize a presumptive fee mechanism. Instead, the Court finds that this case is due to be remanded because it is unable to determine how the bankruptcy court calculated the amount of the fee found to be reasonable in the instant consolidated cases. See Norman, 836 F.2d at 1304 (stating that, although courts have wide discretion in determining the reasonableness of attorney's fees, "[t]he court's order . . . must

18

allow meaningful review . . .").  As noted, in the Combined Order, the bankruptcy court acknowledged the lodestar method but did not engage in a lodestar analysis.  However, the court did not state that it found such an analysis unnecessary or inappropriate.  Neither did the bankruptcy court state that it had expressly established a presumptively reasonable fee for Chapter 13 cases and then make a determination that the presumptive fee should be sufficient in these cases.  Instead, the court discussed only the <u>Johnson</u> factors before finding the fee excessive.  Accordingly, upon review of the Combined Order, the Court cannot determine how the bankruptcy court arrived at the fees awarded in these cases.  <u>See generally</u> Combined Order.  In light of the foregoing, the Court remands this case to the bankruptcy court in order to enable the bankruptcy court to clarify the legal standard it followed in determining the fee awards in the instant consolidated cases.

Accordingly, upon due consideration, it is hereby **ORDERED**:

1.      The bankruptcy court's Combined Order dated August 18, 2006, is **REVERSED**.

2.      This case is remanded to the bankruptcy court with instructions to clarify the legal standard it applied in awarding attorney's fees in the instant consolidated cases.

3.      The Clerk of the Court is directed to transmit a certified copy of this Order to the Clerk of the bankruptcy court.

**DONE AND ORDERED** at Fort Myers, Florida, this 24th day of September, 2007.

MARCIA MORALES HOWARD
United States District Judge

lc3

Copies to:

The Honorable Alexander L. Paskay, United States Bankruptcy Judge
Counsel of Record